IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JON SCHUKART, TERRI HEUBERGER, KAREN TOFTE, ROSALINA HERNANDEZ, MADONA HEBERT, and LARRY LOUIE,<br><br>    PlaintiffS,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, dba STATE FARM INSURANCE COMPANIES, and STATE FARM FIRE AND CASUALTY COMPANY, a foreign corporation, dba STATE FARM INSURANCE COMPANIES,<br><br>    Defendants. | Civ No. 04-6242-AA<br><br>OPINION AND ORDER |

Sharon Stevens
Michael D. Callahan
Callahan and Stevens
5845 Shoreview Lane N, Suite 500
Keizer, Oregon 20937
    Attorneys for plaintiffs

Clay D. Creps
Bullivant Houser Bailey, PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-4096
    Attorney for defendants

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiffs Jon Schukart, Terri Heuberger, Karen Tofte, Rosalina Hernandez, and Madonna Herbert filed suit against defendants State Farm Mutual Automobile Insurance and State Farm Fire and Casualty Company (collectively State Farm) alleging breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. Plaintiffs have dropped their third cause of action, intentional infliction of emotional distress, and defendants move for summary judgment on all remaining claims.

## FACTS

Plaintiffs are former employees of State Farm's Salem, Oregon office. State Farm has a Code of Conduct (the Code) applicable to all employees. Generally, the Code is read aloud to employees, and each employee signs an acknowledgment form attesting to the fact that the employee has read, understood, and agrees to abide by the Code. The Code includes the following language: "You should become familiar with the Code as well as all referenced policies, rules and guidelines, because you are expected to adhere to them. Failure to adhere to them will result in disciplinary action as appropriate." Declaration of Clay Creps, (Creps Decl.), Ex. J, p. 2.

In December 2000, State Farm adopted the Electronic Communications Policy (ECP). The ECP is not contained in the Code;

rather, it is incorporated in the Employee Manual posted on the State Farm's intranet website. In pertinent part, the EPC reads as follows:

> Employees may not use State Farm's electronic information resources . . . [t]o reproduce, display, distribute, or store any materials that are sexually explicit, obscene, . . . or otherwise inappropriate . . . . Inappropriate use of State Farm's electronic information resources or telephonic communication systems may result in disciplinary action up to and including termination.

Declaration of Karen Fauser, Ex. A, p. 2-3.

In 2001 and 2002, each plaintiff signed a Code of Conduct Acknowledgment form.

In June of 2002, Karen Fauser, a supervisor in the Salem office, discovered that Dayna Pierce, another State Farm employee, had inappropriate emails in her "inbox." Fauser received permission from State Farm to monitor Pierce's email account and those who had either sent or received inappropriate emails to or from Pierce.

As a result of this investigation, defendants terminated the employment of Heuberger, Tofte, Hernandez, and Hebert, and demoted Schukart, for sending emails in violation of the ECP. According to defendants, those who sent only inappropriate text, rather than inappropriate pictures, received warnings, while those who sent inappropriate picture were terminated.

On June 21, 2004, plaintiffs filed this action.

///

3 - OPINION AND ORDER

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

DISCUSSION

A.  Breach of Contract Claim

Plaintiffs do not deny that they individually sent emails deemed in violation of the EPC.[1]  Nevertheless, plaintiffs argue that their termination and demotion breached their employment agreements.  Defendants move for summary judgment on grounds that plaintiffs were at-will employees and that no employment contract existed between the parties at the time of the terminations and demotion.  In the alternative, defendants argue that even if a contract did exist, that contract retained the at-will employment component.

In response, plaintiffs argue that an express or implied employment contract existed that modified the at-will employment relationship. That contract, they contend, is based upon the policies and procedures found in the Code, the practices of defendants, and the subjective expectations of the parties.  Thus, plaintiffs argue that defendants breached the express or implied terms of the contract and the covenant of good faith and fair dealing by unfairly terminating or demoting plaintiffs.

In Oregon, an employee may be discharged at any time and for any reason absent a contractual, statutory, or constitutional requirement to the contrary.  Patton v. J.C. Penney Co., Inc., 301

---

[1] Plaintiff Schukart does not admit that the email he sent violated the Electronic Communications Policy.  He does admit, however, that his supervisor determined that it did.

Or. 117, 120, 719 P.2d 854 (1986). That plaintiffs' initial employment with defendants was on an at-will basis is uncontroverted. However, plaintiffs present two arguments in support of the proposition that their at-will employment relationship was modified by express or implied agreement.

First, plaintiffs argue that the Code modified the at-will employment relationship, and that the "written policy statement and statement of expectations contained therein is sufficient to be a contract of employment." Plaintiffs' Memorandum in Opposition, p. 6. Second, plaintiffs contend that State Farm employed an unwritten progressive disciplinary policy, and that State Farm's practices altered the original at-will contract.

Turning to the first argument, plaintiffs essentially assert that the language of the Code has created a "for cause" employment contract between plaintiffs and State Farm. "In the absence of statute, an employee has no claim to be discharged only for good cause unless such an obligation of the employer is explicit or implicit in an individual or collective agreement." Swanson v. Van Duyn Choc. Shops, 282 Or. 491, 493, 579 P.2d 239 (1978). Where no express "good cause" requirement is stated in an employment contract, and where no extrinsic basis to find an implicit agreement is found, courts decline to read a "good cause" requirement into a employment contract. Simpson v. Western Graphics Corp., 293 Or. 96, 100, 643 P.2d 1276 (1982) (citing

6 - OPINION AND ORDER

Swanson, 282 Or. 491, 579 P.2d 239).

I find that the language in the Code cannot fairly be read to explicitly or implicitly alter the at-will employment relationship. Other than asserting that "[t]he Code specifically provides that Defendants will deal fairly and honestly with employees and other," plaintiffs cite no language of the code to support their assertion. Furthermore, the language relied on by the plaintiffs requires an interpretive stretch to conclude that it alters the at-will employment relationship between plaintiffs and defendants.

In Yartzoff v. Democrat-Herald Publ'g Co., 281 Or. 651, 653-54, 576 P.2d 356 (1978), the defendant's employee handbook included an explicit progressive disciplinary policy, including specific progressive steps leading up to termination. The Yartzoff court concluded that a juror could reasonably infer that the "statements in the handbook were intended and considered by both parties to be a part of the terms of plaintiff's original contract of employment." Id. at 656, 576 P.2d 356; see also Maben v. Klamath County, 54 Or. App. 799, 803, 636 P.2d 968 (1981) (finding that employee handbook containing progressive disciplinary steps could constitute implied contract creating property right in employees' employment). In contrast, plaintiffs here cite no language in the Code to suggest that employees could be terminated only for cause or after progressive disciplinary steps, and the Code sets forth no steps that must be taken prior to the termination of employment.

7 - OPINION AND ORDER

Rather, the Code clearly functions as a statement of State Farm's expectations for employee conduct and contains no language suggesting a corresponding restriction on State Farms's conduct or policies toward employees. Thus, the terms of the Code are not susceptible to the interpretation that defendants promised to discharge employees only for cause, and no reasonable juror could conclude as much.

Turning to plaintiffs' second argument, they assert that a genuine issue of material fact exists as to whether State Farm utilized a progressive disciplinary approach in practice, thus modifying the original employment agreement. That assertion, as discussed above, is not supported by the Code or any other supplemental policies. In fact, the ECP expressly states, "Inappropriate use of State Farm's electronic information resources and telephonic communication systems may result in disciplinary action up to and including termination." Fauser Decl., Ex. C, p. 1. Thus, plaintiffs must present evidence that State Farm employed a progressive disciplinary policy.

In Bennett v. Farmers Ins. Co., 332 Or. 138, 26 P.2d 785 (2001), the plaintiff entered into an employment agreement that included express language that the relationship was "at-will." Id. at 142-43, 26 P.2d 785. The plaintiff presented deposition testimony from several supervisors that it was their understanding that the they could not terminate the plaintiff's employment

without "good cause," and that the defendant had documented the plaintiff's performance problems for the express purpose of showing "good cause" for the termination. Id. at 145-46, 26 P.2d 785. Plaintiff also presented evidence that various representatives of the defendant had made clear to him that his employment would be terminated only if he "lied, cheated, or stole." Id. at 146, 26 P.2d 785. Thus, the court held that a reasonable juror could have concluded that the defendant employer had assented to modification of the at-will agreement. Id. at 149, 26 P.2d 785.

By contrast, plaintiffs here proffer no evidence that State Farm employed a progressive discipline policy or that State Farm supervisors acted on the assumption that they could terminate employees only for cause. Plaintiffs merely present generalized statements of this practice without evidentiary support.

In sum, while an employer's written policies and disciplinary practices can modify an at-will employment contract, evidence of the employer's assent to the modification must be based on more than strained interpretations of policy statements and unsubstantiated assertions. Plaintiffs' subjective understanding of the rights and duties between them and State Farm is not a sufficient basis to overcome the legal presumption that employment in Oregon is at-will. Bland v. Blount, Inc., 2001 WL 814954 at *2 (D. Or. April 9, 2001). Therefore, I find that plaintiffs have not presented adequate evidence to support their assertions, and that

9 - OPINION AND ORDER

no genuine issues of material fact remain. Accordingly, defendants are entitled to a judgment as a matter of law.

B. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing claim

Under the theory of tortious breach of duty of good faith and fair dealing, plaintiffs must present evidence that a special relationship or fiduciary-type relationship existed between the parties that was independent of the duties of their employment relationship. Bennett, 332 Or. 138, 160, 26 P.2d 785; Conway v. Pac. Univ., 324 Or. 231, 237, 924 P.2d 818 (1996) (duty to avoid making negligent misrepresentations arises only in "special relationship" in which one party has obligation to pursue interests of other party). Accordingly, unless plaintiffs' relationship with defendants qualifies as the type of "special relationship" that gives rise to a duty of good faith and fair dealing, no breach of duty can have occurred.

An employer-employee relationship in general is not the kind of relationship that would give rise to such duties. Unlike physician-patient, lawyer-client, architect-client, insurer-insured and agent-principal relationships, an employee does not generally place complete control of critical aspects of the employee's person, property or economic interests in the hands of the employer, and the employer generally does not stand in the shoes of the employee or otherwise look after the employee's interests as a fiduciary would. See Eulrich v. Snap-On Tools Corp., 121 Or. App.

25, 36, 853 P.2d 1350 (1993) (discussing types of actions indicative of special relationship between parties); see also Onita Pac. Corp. v. Trustees of Bronson, 315 Or. 149, 161, 843 P.2d 890 (1992).

I find no cases, and the parties cite none, that characterize the relationship between an employer and an employee as a special relationship from which duties independent of the contract arise. Rather, the cases cited by plaintiffs pertain to the tort of intentional infliction of emotional distress; the substance of that analysis is not the same as that which undergirds the fiduciary duty relationship. "The focus instead is on whether the nature of the parties' relationship itself allowed one party to exercise control in the first party's best interest." Bennett, 332 Or. at 161, 26 P.2d 785. Accordingly, I find that plaintiffs fail to present evidence that a special relationship existed with defendants for purposes of the tort of breach of good faith and fair dealing.

## CONCLUSION

For the preceding reasons, defendants' motion for summary judgment (doc. 42) is GRANTED. IT IS SO ORDERED.

Dated this  22   day of February, 2006.


             /s/ Ann Aiken
               Ann Aiken
       United States District Judge

11 - OPINION AND ORDER